IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DALE A. GUILFOIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-493-GMS |
| | ) | |
| DAVID PIERCE, JAMES | ) | |
| SCARBOROUGH, KARL | ) | |
| HAZZARD, JANE DOE, and | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

## I. INTRODUCTION

The plaintiff, Dale A. Guilfoil ("Guilfoil"), a prisoner incarcerated at the Howard R.

Young Correctional Institution ("HRYCI"), Wilmington, Delaware, filed this lawsuit pursuant to

42 U.S.C. § 1983. At the time he filed his complaint, Guilfoil was housed at the Delaware

Correctional Center ("DCC"), now known as the James T. Vaughn Correctional Center, Smyrna,

Delaware. Guilfoil appears *pro se* and was granted leave to proceed *in forma pauperis* pursuant

to 28 U.S.C. § 1915. Guilfoil alleges that the defendants were deliberately indifferent to his

serious medical needs when he was not given a low bunk assignment despite his medical

condition.

Presently before the court are the parties' cross-motions for summary judgment and

supporting memoranda. (D.I. 48, 50, 52, 53, 55.) For the reasons that follow, the court will grant

in part and deny in part the defendants' motion for summary judgment and will deny Guilfoil's

motion for summary judgment.

## II. BACKGROUND

Guilfoil incurred a work related back injury in 1995 and underwent unsuccessful back surgery that same year for herniated discs. (D.I. 50, Pl.'s dep. at 3.) He never returned to work. (*Id.*) Since then, Guilfoil has received continuing medical care, including physical therapy, the administration of pain medication, and pain management. (*Id.* at 3-4.) He has pain in his lower back with tingling and numbness down his right leg due to nerve damage. (*Id.* at 5.) He has been using a cane since January 2006 when it was prescribed by Dr. Messinger. (*Id.* at 5.) During his September 2007 deposition, Guilfoil testified that two physicians have recommended he undergo a second surgery or remain on pain medication because the disc herniation has returned. (*Id.* at 3-4.) At the time of his deposition, Guilfoil was taking Percocet 10 for pain. (*Id.* at 2.) Guilfoil had prior convictions, was released from the Delaware Department of Correction ("DOC"), violated his probation, and was again incarcerated. During his initial months of incarceration Guilfoil was assigned to a bottom bunk while housed at the C and V buildings.[1] (*Id.* at 6.) He was subsequently housed at the DCC in January 2006. (*Id.* at 4, 6.) When Guilfoil arrived at the DCC he asked for a bottom bunk. (*Id.* at 6.) Guilfoil was moved to W building on or about February 14, 2006, and was assigned a top bunk. (D. I. 50, Pl.'s dep. at 8.)

During his first night at the W building, Guilfoil spoke to an unnamed female corrections officer and the next day he spoke to Sgt. Bailey ("Bailey"). (*Id.*) Guilfoil showed Bailey a copy of a December 12, 2005 memo regarding the medical need for a bottom bunk, and requested a

---

[1]Dr. Messinger authored a memo for Guilfoil to be assigned a bottom bunk, dated December 12, 2005. (D.I. 2, ex. A.)

bottom bunk. (*Id.* at 8.) He was told that a copy was "no good" because it was only signed by the doctor. (*Id.*) The next day, on February 15, 2006, Guilfoil submitted a grievance for a bottom bunk assignment to prevent injury to his lower back. (D.I. 2, ex. B-2.) Also, he took his mattress from the top bunk and slept on the floor. (*Id.* at 7-8.)

In the meantime, Guilfoil submitted a sick call slip and went to medical for a new memo since Bailey told him he needed a new one. (*Id.*) Dr. Messinger issued a second memo, dated February 20, 2006, for a bottom bunk assignment. (D.I.2, ex. C.) The note states: *Date* 2-20-06, *Re:* Guilfoil, *To* W Bldg, *Message* Bottom bunk, 12 mo. (i.e., month), DX (i.e., diagnosis) lumbar disc disease radiculopathy[2] both legs." (D.I. 2, ex. C) It also contains Guilfoil's prison identification number. At the time, nurses in medical told Guilfoil that memos for a bottom bunk were faxed to the defendants Captain Hazzard ("Hazzard") and James Scarborough ("Scarborough"), the individuals who take care of the medical bottom bunks.[3] (*Id.* at 8-9.) Guilfoil later showed Bailey a copy of the February 20, 2006 memo, and Bailey told Guilfoil that the noted needed to be signed by Scarborough. (D. I. 50, Pl.'s dep. at 8.) Guilfoil then submitted a second grievance.[4] (D.I. 2, ex. C.)

On February 28, 2006, Guilfoil spoke to Hazzard and told Hazzard that he had received a memo from the physician, it was faxed to Hazzard, but nothing was done. (*Id.* at 9.) Hazzard

---

[2]Disease of the spinal nerve roots. *The American Heritage Stedman's Medical Dictionary* 694 (2d ed. 2004).

[3]Guilfoil also testified that nurses told him the memo was faxed to the chief of security, whom he believed to be Scarborough. (D.I. 50, pl.'s dep. at 9.)

[4]The record does not reflect there was a response to the second grievance. It is stamped "duplicate."

-3-

told Guilfoil that if Guilfoil obtained a memo, and Hazzard received a copy of the memo, then Guilfoil would be moved. (*Id.* at 9.) Plaintiff showed Hazzard the February 20, 2006 memo, and Hazzard told Guilfoil that he would check on it. (*Id.*)

Guilfoil spoke to corrections officer Spriggs on March 6, 2006, showed her the memo, and she told Guilfoil that she sent a copy of the memo to Hazzard on the same day. (*Id.* at 9-10, 13.) Guilfoil received a response to his February 16, 2006 grievance on March 8, 2006, and was told to "submit a sick call slip. if medical feels you need a bottom bunk, they will send a memo to the Security Chief for approval." (D. I. 2, ex. B-1; D.I. 50, Pl.'s dep. at 9.) One month later, on April 9, 2006, Guilfoil wrote to Scarborough, but did not receive a response.[5] (D.I. 50, Pl.'s dep. at 10.)

Guilfoil submitted a third grievance on April 24, 2006. (D. I. 2, ex. D.) Before Guilfoil received a response to the grievance, he wrote to Deputy Warden Pierce ("Pierce") on May 20, 2006, asking for help in obtaining a bottom bunk. (D. I. 2, ex. E-1.) Pierce authored a memo to Guilfoil dated June 5, 2006, and advised Guilfoil that he forwarded the issue to the director of nursing for investigation and action. (*Id.* at ex. E-2.)

Guilfoil received a response to his April 24, 2006 grievance on June 7, 2006. (D.I. 50, Pl.'s dep. at 10.) It stated that bottom bunks are assigned as they become available; that only medical can request that an inmate receive a bottom bunk; and that approval is issued by Major Holman or Scarborough." (D. I. 2, ex. D.) On July 7, 2006, medical responded to Guilfoil's May 20, 2006 letter to Pierce and advised Guilfoil that the issue of the correctional staff honoring

___

[5]Guilfoil testified that he did not have a copy of the April 9, 2006 letter. (D.I. 50, Pl.'s dep. at 10.)

the memo for a bottom bunk assignment could not be addressed by the medical department, but must be addressed the corrections staff in his housing area. (*Id.* at ex. F.) Prior to the time he received the July 7, 2006 letter, Guilfoil spoke to several corrections officers who told him they had telephoned the "count office" and were told that his memos were "sent up front, " but that he could not be moved. (D.I. 50, Pl.'s dep. at 10.)

Guilfoil testified that bottom bunks became available three times, from February until August, but he was not transferred to them. (*Id.* at 11.) Guilfoil was eventually moved from W building towards the end of August or the beginning of September 2006. (*Id.*) He was given a bottom bunk at his new housing assignment. (*Id.*)

Guilfoil testified that any type of climbing causes him pain. (*Id.* at 9.) He testified that sleeping on the floor aggravated his back injury and caused him more pain. (*Id.* at 14.) Once he was transferred and received a bottom bunk assignment, his condition improved. (*Id.* at 14.)

Guilfoil named Pierce as a defendant because he is the deputy warden at the DCC and Guilfoil wrote to him about the bunk assignment issue. (*Id.* at 13.) He acknowledged that Pierce forwarded his letter, but testified that Pierce should have found out or done something since he is the supervisor. (*Id.*) Guilfoil never met Pierce and has never spoken to him. Guilfoil named Scarborough as defendant because he wrote to him but Scarborough never responded. (*Id.*) Also, the grievance response stated that Scarborough is the individual who approves the bunk assignment. (*Id.*) Guilfoil has never met Scarborough. (*Id.*) Guilfoil named Hazzard as a defendant because he spoke to him, showed Hazzard a copy of the memo, Hazzard told him he would check on it, and nothing was ever done. (*Id.*) Also, Hazzard was faxed a copy of the February 20th memo, but nothing was done. (*Id.* at 13-14.)

-5-

## III. DISCUSSION

### A. Standard of Review

The court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Moreover, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the

-6-

burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The defendants move for summary judgment on the grounds that the evidence does not support a claim of deliberate indifference to a serious medical need; there has been no showing of personal involvement by any defendant; the defendants are entitled to qualified immunity in their individual capacities; and they cannot be held liable in their official capacities under the Eleventh Amendment. (D.I. 49, 50.) Guilfoil moves for summary judgment on the grounds that the defendants were aware of his medical need for a low bunk assignment, yet did nothing.

**B. Eighth Amendment**

The defendants argue that they are entitled to summary judgment because Guilfoil cannot demonstrate that he has a serious medical need. They contend that Guilfoil's allegations of deliberate indifference to a serous medical need are asserted against non-medical staff who were not responsible for providing medical treatment to inmates. Guilfoil argues that he is entitled to summary judgment because he attempted to resolve the issue by writing to Pierce and Scarborough and followed all prison rules in an effort to obtain a bottom bunk, to no avail. He argues that the defendants were provided with copies of the doctor's order for a bottom bunk, but took no action and failed to acknowledge or respond to his letters.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a

-7-

serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to an inmate's medical needs and the risk of harm that it presents in certain contexts creates a cause of action under 42 U.S.C. § 1983 for cruel and unusual punishment under the Eighth Amendment. *Farmer*, 511 U.S. at 825.

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care."[6] *Estelle v. Gamble*, 429 U.S. at 104-05. For example, a defendant acts with deliberate indifference when the defendant "1) den[ies] reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay[s] necessary medical treatment for nonmedical reasons, 3) erect[s] arbitrary and burdensome procedures that result in interminable delays and outright denials of care, or 4) prevent[s] an inmate from receiving recommended treatment for serious medical needs, or den[ies] access to a physician capable of evaluating the need for treatment." *Cooleen v. Lamanna*, 248 F. App'x 357, 360 (3d Cir. 2007).

The defendants contend that *Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993) precludes any liability because, in their positions as prison administrators, they are not charged with providing medical care to Guilfoil and, therefore, cannot be considered deliberately indifferent to a serious medical need. The U.S. Court of Appeals for the Third Circuit has concluded that

---

[6]Negligence, however, is not compensable as a constitutional deprivation. *See Daniels v. Williams*, 474 U.S. 327, 332-34 (1986).

prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). The Third Circuit later clarified that "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer,* 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

This case, however, does not rise and fall upon providing medical care. Indeed, it is evident from the record that the medical department provided Guilfoil with medical care. Rather, the issue is whether the defendants knew of Guilfoil's substantial risk of harm (i.e., knew his medical condition required a bottom bunk assignment) and disregarded that risk. The defendants were not required to accept Guilfoil's assertions that his medical condition necessitated a bottom bunk. The defendants, however, will not escape liability "if the evidence show[s] that [they] merely refused to verify underlying facts that [they] strongly suspected to be true, or declined to confirm inferences of risk that [they] strongly suspected to exist . . . . " *Farmer*, 511 U.S. at 843. n.8. Refusal of prison officials to assign an inmate with a herniated disc to a bottom bunk may constitute deliberate indifference if the inmate's condition is sufficiently serious. *Allen v. Warden of Dauphin County Jail*, Civ. A. No. 1:07-CV-1720, 2008 WL 4452662, at *4 (M.D. Pa. Sept. 29, 2008); *See Harvey v. Ridge*, No. Civ. A. 04-1221, 2007 WL 674710, at *6 (D.N.J. Feb. 28, 2007) (holding that prison officials did not act with deliberate indifference to inmate's

herniated disc condition because they assigned him to a lower bunk and placed him on a light-duty work assignment), *aff'd, Harvey v. Chertoff*, 263 F. App'x 188 (3d Cir. 2008).

The defendants argue that Guilfoil has failed to show an actual injury by referencing a portion of Guilfoil's testimony that he did not believe there was much difference between sleeping on the floor and metal and that his condition improved once he was given a bottom bunk assignment. Yet, the defendants ignore Guilfoil's testimony that he has had ongoing treatment for his back condition, including pain medication, pain management, that he testified that any type of climbing causes him pain, and that sleeping on the floor aggravated his back condition and caused him more pain. *See Glenn v. Hayman*, Civ. No. 07-112 (PGS), 2007 WL 894213, at *10 (D.N.J. Mar 21, 2007) (citing *Lavender v. Lampert*, 242 F. Supp. 2d 821 (D. Or. 2002), noting that a serious medical need exists when there is the presence of a medical condition that significantly affects an individual's daily activities or the existence of chronic and substantial pain.).

The defendants' position that Guilfoil cannot demonstrate that he has a serious medical need is not borne by the record. Guilfoil testified to his continued back problem, that he had back surgery for herniated discs and that more surgery has been recommended due to a return of the herniation. Notably, the medical note from Dr. Messinger states that Guilfoil has lumbar disc disease and radiculopathy in both legs. *See, e.g., Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (finding serious back pain satisfies the requirement of a serious medical need).

The defendants further argue that because the February 22, 2006 Dr. Messinger memo is illegible, it could not be construed as a directive for the DCC staff to provide a bottom bunk to Guilfoil. They contend that Guilfoil should have requested a second memo with clear language

-10-

in order to receive a bottom bunk and it was due to his inaction that he did not receive a bottom bunk. They interpret the March 8, 2006 grievance response to the February 15, 2006 grievance as instructing Guilfoil to obtain and submit a new medical memo to either Holman or Scarborough. These arguments are not well-taken and are seriously flawed.

Contrary to the defendants' assertion, the February 22, 2006 Dr. Messinger note is **not** illegible. The court was able to read every word of the note and does not understand how the defendants can take the position that it is illegible and, therefore, not a directive for the DCC staff to provide Guilfoil with a bottom bunk.

The defendants interpret the March 8, 2006 grievance response as instructing Guilfoil "to obtain and submit specific documentation (a new medical memo) to either Holman or Scarborough," when it says no such thing. (D.I. 50 at 6.) Neither the March 8, 2006 grievance response nor the June 7, 2006 grievance response instructed Guilfoil to obtain a new medical memo. The March 8, 2006 grievance response instructs Guilfoil to submit a sick call slip and if medical feels he needs a bottom bunk it will send a memo to the security chief for approval. Unknown to the grievance chairperson, by the time of the grievance response, Guilfoil had already taken this action. The last grievance response instructs Guilfoil that only medical can request that an inmate be assigned a bottom bunk and that approval is required by Holman or Scarborough. There is no mention that Guilfoil must obtain a new medical memo.

Finally, the facts before the court do not indicate that Guilfoil's inaction was the reason he did not receive a bottom bunk. To the contrary, the record indicates that Guilfoil took all the necessary steps to comply with the DCC procedures for a bottom bunk assignment. He submitted a sick call slip and obtained a new medical note on February 22, 2006, after he was

-11-

told by Bailey that his first note would not suffice; he was told by medical nurses that the February 22, 2006 memo was faxed to Hazzard and Scarborough. He spoke to Hazzard on February 28, 2006, who told him that if he obtained a memo and Hazzard received a copy of the memo, then Guilfoil would be moved. Guilfoil showed Hazzard the February 20th memo and Hazzard told Guilfoil that he would check on it. Guilfoil spoke to Spriggs on March 6, 2006, showed her the memo, and she told Guilfoil that she sent a copy of the memo to Hazzard on the same day.

When he received the response to his February 16, 2006 grievance on March 8, 2006, Guilfoil was told that if medical felt he needed a bottom bunk, it would send a memo to the Security Chief for approval, but Guilfoil had already been to medical, received the note, and been told by medical nurses that it had been faxed to defendant Hazzard and Scarborough. The response to his last grievance told Guilfoil that only medical can request that an inmate receive a bottom bunk (which it had done) and that approval was issued by Major Holman or Scarborough (neither of whom had approved the bottom bunk even though the memo had been faxed to Scarborough). Finally, medical advised Guilfoil that the issue of the correctional staff honoring the memo for a bottom bunk assignment could not be addressed by the medical department, but must be addressed by the corrections staff. The record reflects that Guilfoil took repeated steps to obtain a bottom bunk assignment, yet he was not provided with a bottom bunk during his entire stay at W building, from February 14, 2006 until the end of August or beginning of September 2006, a good six months. The question is whether the defendants were deliberately indifferent to Guilfoil's risk of harm in failing to provide him a bottom bunk assignment.

-12-

## C. Personal Involvement/Respondeat Superior

The defendants argue that Guilfoil has made no showing of personal involvement by any defendant and, therefore, they are entitled to summary judgment. They oppose Guilfoil's motion for summary judgment on the basis that they are named as defendants based solely upon their supervisory positions.

As is well established, supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights. *Id.; see Monell v. Department of Social Services* 436 U.S. 658, 694-95 (1978). Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff. *Sample v. Diecks,* 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240 (3d. Cir. 2005).

The record supports summary judgment in favor of Pierce. Guilfoil named Pierce as a defendant because he is the deputy warden at the DCC and he had written a letter to Pierce about the bunk assignment issue. He acknowledged that Pierce forwarded the letter, but testified that

Pierce should have found out or done something since he is the supervisor. As discussed, there is no supervisory liability under § 1983. Moreover, rather than exhibit deliberate indifference to Guilfoil's situation, Pierce took action and forwarded Guilfoil's letter to the director of nursing for investigation and action. In turn, medical conducted an investigation and advised Guilfoil on the steps necessary to obtain a bottom bunk assignment. Accordingly, the court will grant Pierce's motion for summary judgment.

Hazzard and Scarborough argue that Guilfoil has failed to demonstrate their requisite personal involvement necessary for a § 1983 claim. In support of their position they argue that Guilfoil's allegations are based upon hearsay statements from other individuals that his messages were passed on to Hazzard and Scarborough and that Guilfoil produced no evidence that he individually contacted Hazzard or Scarborough. They also advance the untenable position that a legible medical memo would have made Scarborough aware that Guilfoil should be assigned to a bottom bunk. The defendants acknowledge that a legible memo would have made Scarborough aware that Guilfoil should be assigned to a bottom bunk. (D.I. 50, at 7.) As noted, the memo is legible.

The "United States Supreme Court [has] rejected the view that the non-moving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see Smith v. Kyler*, No. 08-1731, 2008 WL 4516695 (Oct. 9, 2008). "[H]earsay evidence . . . may be considered if the out-of-court declarant could later present the evidence through direct testimony (i.e., in a form that would be admissible at trial." *Id.* There is no indication that the individuals Guilfoil referred to in his deposition

-14-

would not be able to testify at trial. Thus, there is no reason why the statements Guilfoil testified to during his sworn testimony at issue cannot be considered to defeat summary judgment. Finally, Guilfoil testified that he personally spoke to Hazzard regarding the need for a bottom bunk assignment.

There remain genuine issues of material fact as to whether Hazzard and Scarborough were deliberately indifferent to Guilfoil's risk of harm. Taking into consideration the testimony at issue that the February 20, 2006 memo was faxed to Scarborough, as well as Guilfoil's testimony that he spoke to Hazzard about his medical condition, it appears they were aware of his medical condition. The court turns to Scarborough and Hazzard's response to the apparent risk. It is evident from the record that during Guilfoil's six month stay in the W building he was not given bottom bunk status despite his efforts. Yet it is unclear if this occurred because of bureaucratic snafues or something else. Neither Hazzard nor Scarborough sought to enlighten the court for the reasons of their action or inaction. Accordingly, the court must deny Hazzard, Scarborough, and Guilfoil's motions for summary judgment on the Eighth Amendment issue.

Hazzard and Scarborough also contend that they are entitled to qualified immunity. The two-step test as set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), is not mandatory, but often appropriate when analyzing qualified immunity. *Pearson v. Callahan*, –U.S.–, 129 S.Ct. 808, 818 (2009). Under the *Saucier* protocol, first, the court examines whether or not the alleged conduct, taken in the light most favorable to Guilfoil, violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* If the allegations amount to the violation of a constitutional right, the court proceeds to the

second inquiry and determine if the right was "clearly established in the specific context of the case." *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Saucier*, 533 U.S. at 202 (noting that an officer is entitled to qualified immunity unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"). Courts now have the discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Pearson*, 129 S.Ct. at 818.

In the case at bar there remain genuine issues of disputed material fact as to whether Hazzard and Scarborough were deliberately indifferent to Guilfoil's risk of harm and, thus, violated his constitutional rights. The court, therefore, concludes that a determination of whether Hazzard and Scarborough violated Guilfoil's Eighth Amendment rights remains a question for a jury trial. Accordingly, the court will deny their motion for summary judgment on the issue of qualified immunity.

## D. Eleventh Amendment Immunity

The defendants seek summary judgment on the claims raised against them in their official capacities. The Eleventh Amendment bars suits against states. *See Bolden v. SEPTA*, 953 F.2d 807, 813 (3d Cir. 1991). The State has not waived its immunity from suit in federal court, and although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. 2007) (citations omitted). Additionally, claims made against state officials in their official capacities are treated as claims made against the state itself. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71(1989). For the above reasons, the court will grant the defendants' motion for summary judgment on this issue.

## IV. SERVICE

Guilfoil amended his complaint and added as defendants John Doe and Jane Doe. (D.I. 18.) To date, he has neither identified the Doe defendants, nor served them. Therefore, the court will order Guilfoil to show cause why the Doe defendants should not be dismissed for Guilfoil's failure to identify them and to serve process as required by Fed. R. Civ. P. 4.

## V. CONCLUSION

For the above stated reasons the court will grant the defendants' motion for summary judgment as to the defendant Deputy Warden Pierce and the Eleventh Amendment immunity issue and will deny it in all other respects. The court will deny Guilfoil's motion for summary judgment. Finally, the court will order Guilfoil to show cause why the Doe defendants should not be dismissed for failure to identify and serve as required by Fed. R. Civ. P. 4. An appropriate order will be entered.

_____ 16 , 2009
Wilmington, Delaware

CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DALE A. GUILFOIL,                     )
                                      )
          Plaintiff,                  )
                                      )
          v.                          )        Civil Action No. 06-493-GMS
                                      )
DAVID PIERCE, JAMES                   )
SCARBOROUGH, KARL                     )
HAZZARD, JANE DOE, and                )
JOHN DOE,                             )
                                      )
          Defendants.                 )

**ORDER**

At Wilmington this _16th_ day of ___March___, 2009, for the reasons set forth in

the Memorandum issued this date;

    1. The defendants' motion for summary judgment is **granted** as to the defendant Deputy

Warden Pierce and the Eleventh Amendment immunity issue and **denied** in all other respects.

(D.I. 48.) Deputy Warden Pierce is **dismissed** as a defendant.

    2. The plaintiff's motion for summary judgment is **denied**. (D.I. 52.)

    3. The plaintiff **shall show cause** on or before _March 31, 2009_ why the Doe

defendants should not be dismissed for failure to identify and serve pursuant to Fed. R. Civ. P. 4.

CHIEF, UNITED STATES DISTRICT JUDGE